```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :       CRIMINAL ACTION
                                :
           v.                   :
                                :
WILSON A. GARCIA                :       NO. 04-662-2
```

MEMORANDUM

Bartle, C.J.                                          March 10, 2009

Before the court is the motion of defendant Wilson A. Garcia for relief under 28 U.S.C. § 2255. Defendant asserts that he received ineffective assistance of counsel at trial.

On May 10, 2005, a jury found defendants Wilson Garcia and his brother Fernando Garcia guilty of (1) knowingly and intentionally distributing or aiding and abetting the distribution of more than 500 grams of cocaine; and (2) knowingly and intentionally distributing or aiding and abetting the distribution of more than 500 grams of cocaine within 1,000 feet of a public school. See 21 U.S.C. § 841(a)(1) and (b)(1)(B); 21 U.S.C. § 860(a); 18 U.S.C. § 2. On February 24, 2006, the court sentenced defendant to ten years in prison and eight years of supervised release. Our Court of Appeals affirmed the conviction and sentence on August 10, 2007. United States v. Wilson Garcia, 238 Fed. App'x 821 (3d Cir. 2007). The instant petition, initially submitted on July 28, 2008, is timely.

I.

On April 21, 2004, a confidential informant ("CI") arranged for undercover Philadelphia Police Officer Robertito Fontan ("Fontan") to purchase a kilogram of cocaine from "two guys from Reading ... [who] might be coming down" to Philadelphia.  Around 5:00 p.m. the next day, the CI called Fontan and told him to come to 4430 North 3rd Street, Philadelphia to make the deal.  The house was within 1,000 feet of Cayuga Elementary School.

At approximately 6:00 p.m. on April 21, 2004, Fontan went to the address and was admitted into the house by defendant's brother, Fernando A. Garcia ("Fernando").  Defendant was present along with the informant, a male friend of the informant, and a teenaged woman.  In the living room, Fontan discussed the drug transaction with Fernando in Spanish as defendant stood two or three feet away and listened.  At the end of the conversation defendant said, "Let's get this over with." Fernando then told Fontan to wait inside the house while he left the residence.  Approximately five minutes later, defendant looked out of the front window of the house, told Fontan to "go outside to a red minivan," and held open the front door for Fontan.

Fontan left the house and entered a red minivan parked across the street, climbing into the second row of seats. Fernando was seated in the driver's seat.  He informed Fontan that the kilogram of cocaine was in the third row of seats, at

which point Fontan obtained the cocaine, inspected it, and announced his satisfaction.  Fontan then made partial payment in the amount of $11,000 and told Fernando that he needed to leave the minivan in order to retrieve the remainder of the purchase money from his truck.  While at his truck, Fontan called for backup officers.  At that time, he observed the defendant leave 4430 North 3rd Street and walk a half-block away.

      Fontan returned to the minivan and handed the $12,000 to Fernando, who was in the process of placing the other $11,000 in the glove compartment.  Fernando then noticed a backup officer who had pulled up his vehicle near the minivan.  Fernando swore, exited the minivan with the $12,000 still in hand, and ran off down the street.  Defendant, who was still a half-block away, got into the front passenger seat of a parked car, which was then driven away by another individual.  Both Fernando and defendant were apprehended shortly thereafter.  At the time of the arrest, defendant had in his possession a Pennsylvania driver's license listing a Reading address.  Paperwork found in the minivan showed that it was owned by defendant.

      The court held a hearing on this motion on December 19, 2008 at which both defendant and his trial counsel, Noah Gorson, testified.  Defendant testified that shortly before trial, he met with both Gorson and counsel for Fernando.  The two attorneys attempted to prepare defendant for trial by subjecting him to mock cross-examination.  Defendant recalled telling the attorneys that he would testify to a version of events in which his brother

was entirely responsible for the drug transaction at issue, and that he, defendant, was completely unaware of what was transpiring.  According to defendant, Fernando's counsel responded by threatening to cross-examine him and "take [him] down" if he took the stand.  Defendant testified that at trial, he was afraid to tell the court of his desire to testify because of the statements made by his brother's counsel.  Defendant also stated that Gorson, his own counsel, had told him on two separate occasions that he "was not going to testify."  The first such occasion allegedly occurred after the meeting described above and the second, after the government rested at trial.

   Gorson, an experienced and well-regarded criminal defense attorney, told the court at the December 19, 2008 hearing that he clearly remembered the trial and events leading up to it.  He specifically recalled informing defendant that he had an absolute right to testify and that the decision whether to exercise that right was defendant's alone.  He added that he had warned the defendant that the consequences of a decision to testify would likely include cross-examination by both the federal prosecutor and by his brother's counsel.  He also stated that at the conclusion of the government's case he had advised defendant against taking the stand because he thought "things were going well" for defendant.  Gorson acknowledged the occurrence of the meeting with defendant and counsel for Fernando but had no memory of defendant ever telling him that he was too

afraid to testify on the basis of statements made by his brother's counsel.

Defendant also testified at the December 19, 2008 hearing as to the second basis for his current motion, that is, that Gorson did not adequately inform him of the mandatory minimum sentence he faced at trial. Defendant stated that in the months leading up to trial, he was aware of the five-year mandatory minimum sentence carried by crimes charged in the indictment. On the day before trial commenced, however, the government filed notice with the court pursuant to 21 U.S.C. § 851(a)(1). As a result of this filing, the government was permitted to seek increased punishment on the basis of defendant's prior drug felony conviction. In this case, the notice increased the applicable mandatory minimum sentence from five years to ten years. Defendant testified that Gorson had not told him before the filing of the notice that the government could seek an increased mandatory minimum sentence on those grounds. He testified that had he known of that possibility, he would have accepted the government's earlier offer to recommend to the court imprisonment of 63 months.

Gorson recalled on the stand that both defendants and their attorneys had recognized and discussed long before trial the possibility that the government would file a notice under § 851. He stated that defendant had refused the government's plea offer of 63 months largely because he was reluctant to provide the government with any information surrounding his

participation in the crime.  He further testified that Fernando had expressed a desire to plead guilty on the basis of the possible ten-year sentence but that defendant had dissuaded him from doing so.

## II.

To establish a claim of ineffective assistance of counsel under the Sixth Amendment to the United States Constitution, a defendant must demonstrate that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  The United States Supreme Court has refused to "articulate specific guidelines for appropriate attorney conduct" and has instead emphasized that the proper measure of attorney performance "remains simply reasonableness under prevailing professional norms."  Wiggins v. Smith, 539 U.S. 510, 521 (2003).  In addition, the Supreme Court has cautioned that courts must "indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  Bell v. Cone, 535 U.S. 685, 702 (2002) (quoting Strickland, 466 U.S. at 689).

Defendant first claims that his Sixth Amendment rights were violated because his counsel denied him the right to testify

in his own defense.  <u>See</u> <u>Ortega v. O'Leary</u>, 843 F.2d 258, 261 (7th Cir. 1988).  He alleges that this occurred when his attorney twice told him that he "was not going to testify," and second, because he was intimidated into remaining silent at trial by a threat that his brother's counsel would "take [him] down" if he took the stand and attempted to place the blame on his brother.

We credit the testimony of defendant's trial counsel over the unsubstantiated, self-serving testimony of defendant himself.  Gorson expressed great familiarity with the obligations he owes to a client charged with a crime in federal district court.  More importantly, he demonstrated a vivid and internally consistent recollection of the events at issue.  He testified squarely that he informed defendant that the right to testify was defendant's alone.  The fact that he advised defendant against testifying after the government's case-in-chief does not bolster defendant's claim in the slightest.  We will deny relief to defendant on this basis.  Defendant's associated claim, that he was cowed into silence at trial due to a threat of cross-examination made by his co-defendant's counsel, is not credible and likewise fails to merit relief.

Defendant also asserts that his counsel did not tell him that the government could seek a mandatory minimum sentence of greater than five years on the basis of defendant's criminal history.  He asserts that in the absence of counsel's failure in this regard he would have accepted the government's plea offer of 63 months in prison rather than face a mandatory minimum sentence

of ten years if convicted at trial.  Defendant is correct that these assertions, if correct, might serve as the basis for a successful claim of ineffective assistance of counsel.  See United States v. Day, 969 F.2d 39, 43-45 (3d Cir. 1992).

Again, we are faced with a direct contradiction between the testimony of defendant and his counsel.  We find the testimony of Gorson on this point to be credible and that of defendant not credible.  On the record before us, we have no doubt that defense counsel timely informed his client of his exposure to a ten-year mandatory minimum sentence.

We find defendant's remaining arguments meritless.  Accordingly, we will deny the motion of Wilson Garcia for relief under 28 U.S.C. § 2255.  Because defendant has not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), we will not issue a certificate of appealability.

```
```
```
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : CRIMINAL ACTION
v. :
WILSON A. GARCIA : NO. 04-662-2

ORDER

AND NOW, this 10th day of March, 2009, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of Wilson Garcia for relief under 28 U.S.C. § 2255 is DENIED; and

(2) a certificate of appealability is not issued.

BY THE COURT:

/s/ Harvey Bartle III
C.J.